DECISION.
{¶ 1} Plaintiff-appellant, the city of Cincinnati, appeals from the order of the Hamilton County Municipal Court granting defendant-appellee Arcadio Rincon Lopez's motion to suppress evidence stemming from his detention by the Cincinnati police, on the grounds that there was no probable cause to arrest him for driving under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(1) and for operating a vehicle with a concentration of .169 grams by weight of alcohol per 210 liters of his breath in violation of R.C. 4511.19(A)(3).[1]
{¶ 43} In its sole assignment of error, the city of Cincinnati argues that the trial court erred in suppressing the evidence.
{¶ 44} At the suppression hearing, the city presented testimony from Cincinnati Police Officer Paul Grein as well as several exhibits, including a videotape of the traffic stop, that the trial court admitted into evidence. Officer Grein testified that on the evening of April 3, 2002, he had parked his patrol car to watch oncoming traffic at milepost 5.3 on Interstate 71. Lopez was operating a motor vehicle southbound on I-71. Grein registered Lopez's speed with his laser gun at eighty-one miles per hour in an area where the speed limit was marked fifty-five miles per hour. Grein pursued Lopez's vehicle, which pulled over to the berm at milepost 3.9.
{¶ 45} Grein approached the vehicle on foot and told Lopez that he had pulled him over for speeding. He asked Lopez for his driver's license. Lopez handed Grein a Mexican driver's license. Grein, who was trying to verify Lopez's identity, then asked Lopez some questions about the ownership of the vehicle, his address, and his place of employment. Grein testified that while Lopez was able to answer some of his questions, he did not answer others. Grein testified that, during this questioning, he had smelled a strong odor of alcohol on Lopez's breath and observed that Lopez's eyes were bloodshot. Grein, however, was unsure if Lopez's inability to answer his questions was a result of Lopez's intoxication, his inability to understand English, or an attempt to be deliberately evasive.
{¶ 46} Grein, suspecting that Lopez was intoxicated, ordered Lopez out of the vehicle. When Lopez was getting out of the vehicle, he dropped something, which Grein picked up and handed to Lopez. While Lopez was walking back behind the vehicle, Grein testified that Lopez moved with a "kind of a shuffle." Grein testified that he continued to ask Lopez some questions about his date of birth, address, social-security number, and the ownership of the car. At one point, Grein asked Lopez for some additional identification. When Lopez reached into his wallet for this identification, he dropped a piece of paper, which he bent down and picked up without swaying or stumbling. Shortly thereafter, Grein asked Lopez if he had been drinking. Lopez admitted that he had consumed two beers that evening. Grein then attempted to administer the horizontal gaze nystagmus test. But he quickly abandoned the test when Lopez would not follow his instructions. Grein then ordered Lopez into his patrol car while Grein attempted to gain more information from Lopez. At one point, Grein spoke with a passenger in Lopez's car, who admitted that he had also been drinking. Grein also tried to locate a Spanish-speaking police officer who could assist him in questioning Lopez.
{¶ 47} Grein concluded, based upon his observations, that Lopez was too intoxicated to drive and arrested him for DUI. Grein then transported Lopez to a police station where Lopez consented to an intoxilyzer test. The test showed that Lopez had a concentration of .169 grams of alcohol per two hundred ten liters of his breath.
{¶ 48} In granting Lopez's motion to suppress, the trial court, relying upon this court's decision in State v. Taylor,[2] held that a strong odor of alcohol, bloodshot eyes, and a speeding violation were insufficient to constitute probable cause to arrest for DUI. In doing so, the trial court never addressed Lopez's admission that he had been drinking. The trial court focused instead upon a videotape of the traffic stop. The trial court stated that its review of the videotape had not only discounted Grein's testimony that Lopez had walked with a kind of a shuffle after getting out of his vehicle, but also the city's argument that Lopez's dropping of something when he left the vehicle supported an inference that Lopez was intoxicated. In reaching its conclusion, the trial court stated that the videotape of the stop showed Lopez dropping a second item on the ground, which he was able to pick by himself without any swaying or stumbling. The trial court also stated that it was troubled by Grein's testimony that he was unclear whether Lopez's confusion was due to alcohol consumption or to his inability to understand English.
{¶ 49} We begin our analysis by noting that when we review a trial court's suppression ruling, we defer to the trial court's findings of historical fact, but assess the application of law to those facts de novo.[3] In this case, neither party disputes that Lopez's speed of eighty-one miles per hour in a posted fifty-five-mile-per-hour zone furnished the police officer with a lawful cause to stop Lopez and detain him.[4] Thus, the central issue is whether Officer Grein had probable cause to detain Lopez beyond the speeding citation and to arrest him for driving under the influence.
{¶ 50} The city contends that the following facts gave rise to probable cause and were sufficient to distinguish this case from Taylor: Lopez's excessive speed, the strong odor of alcohol on his breath, his bloodshot eyes, his admission that he had consumed two beers, his confusion during police questioning, his dropping of something when he got out of the vehicle, and his walking with a shuffle. The city further contends that the intoxilyzer test results should not have been suppressed because Lopez's counsel stipulated that Lopez was not contesting any issues relating to the intoxilyzer, its operation, or the qualifications of operator.
{¶ 51} A police officer may arrest an individual without a warrant, if at the time the arrest is made, the facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person in believing that the individual has committed or is committing an offense.[5] In State v. Taylor, we held that speeding and an odor of alcohol were insufficient to constitute probable cause to arrest an individual for driving under the influence.[6]
{¶ 52} In subsequent cases, however, we have limited the holding in Taylor. In State v. Denlinger,[7] for example, we reversed a trial court's decision granting a motion to suppress based upon a lack of probable cause. In that case, police had stopped the defendant for a traffic violation. We held that a police officer's testimony that the defendant's breath smelled of alcohol, that his eyes were glassy, and that his speech was slurred, when combined with the defendant's admission that he had consumed "four light Jack Daniels," was sufficient to constitute probable cause to arrest the defendant for DUI.
{¶ 53} Similarly, in State v. Tonne,[8] we reversed a trial court's decision granting a motion to suppress based on a lack of probable cause to arrest. In Tonne, the police officer, after pulling a car over, smelled alcohol on the defendant's breath, observed his red, watery eyes, and saw empty beer cans in the car. The defendant had also swayed as he got out of the vehicle. We concluded that these facts were sufficient to constitute probable cause to arrest the defendant for DUI.
{¶ 54} In this case, Grein testified that after he had stopped Lopez's vehicle for speeding, he smelled a strong odor of alcohol on Lopez's breath and noticed that his eyes were bloodshot. Furthermore, Lopez admitted that he had been drinking. We hold that these three facts were sufficient to avoid Taylor. While we agree with the trial court that some of the confusion exhibited by Lopez could have been caused by language problems, the evidence was sufficient, notwithstanding this confusion, to establish probable cause. We, therefore, hold that the state presented sufficient evidence of probable cause to allow the officer to arrest without a warrant. We decline, however, to address any issues related to the intoxilyzer, as the trial court never reached this issue. Consequently, we sustain the state's sole assignment of error, reverse the trial court's judgment, and remand this case for further proceedings consistent with this decision.
Judgment reversed and cause remanded.
Winkler, J., concurs.
Painter, J., dissents.
[1] Lopez was also cited for speeding in violation of Cincinnati Municipal Code 50-6-8.
[2] (1981), 3 Ohio App.3d 197, 444 N.E.2d 481.
[3] See State v. King, 1st. Dist. No. C-010778, 2003-Ohio-1541, at ¶ 17.
[4] See State v. Johnson, 1st Dist. Nos. C-010621 and C-010622, 2002-Ohio-2884, at ¶ 7.
[5] State v. Beck (1964), 379 U.S. 91, 85 S.Ct. 223.
[6] 3 Ohio App.3d at 197-198.
[7] State v. Denlinger (Feb. 2, 1983), 1st Dist. No. C-829252.
[8] State v. Tonne (Sept. 24, 1999), 1st Dist. No. C-980710.